GLR/row

FILED
U.S. DISTRICT COURT
DISTRICT OF KANSAS

98 JAN -6 PM 4: 52

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

RALPH L. DELOACH
CLERK
BY _____ DEPUTY
AT KANSAS CITY, KS.

DENNIS MARTEN,                              )
                                            )
                      Plaintiff,            )
                                            )      CIVIL ACTION
v.                                          )
                                            )      No: 96-2013-GTV
YELLOW FREIGHT SYSTEM, INC.,                )
                                            )
                      Defendant.            )      ENTERED ON THE DOCKET
                                            )      DATE: 1-7-98

## MEMORANDUM AND ORDER

Before the court is Plaintiff's Motion to Compel Discovery (doc. 86). Pursuant to Fed. R. Civ.

P. 37 and D.Kan. Rule 37.1, plaintiff thereby seeks an order to compel defendant to fully answer

Interrogatory 1 of his Third Set of Interrogatories. He also asks that defendant be ordered to produce

the following documents: all "personal" files of Gary Bowman, responsive to Request 2 of his Third

Request for Production of Documents; and all minutes, responsive to Requests 1, 5, and 6 of his Second

Request For Production, of any meeting at which defendant decided to terminate or suspend him or

place him on probation. Defendant opposes the motion.

Interrogatory 1 asks defendant to "[l]ist by name of subject employee all 'personal' files main-

tained by Gary Bowman from January 1994 to the present." Request 2 seeks production of those files.

Defendant objects that the information sought is irrelevant. The court overrules the objections. The

files appear reasonably calculated to lead to the discovery of admissible evidence. Defendant

essentially concedes the point. In opposing the motion it states that "[u]nless other employees engaged

in similar behavior or conduct as plaintiff, Bowman's files on these employees would have no bearing

127

on whether Bowman treated plaintiff differently by documenting his behavior and conduct." (Def.'s Resp. In Opp'n To Pl.'s Mot. to Compel Disc., doc. 106, at 5.) It then proclaims that "no evidence" exists that other employees have engaged in conduct similar to that which resulted in the termination of plaintiff. A litigant need not accept the opinion of opposing parties, however, as to the relevancy of a document. He may discover the contents of the document. He may then draw his own conclusion as to whether Bowman treated plaintiff differently from other employees. The request must only be reasonably calculated to lead to the discovery of admissible evidence.

Defendant also contends that information regarding "personal" files post-dating May 1, 1995, the date it terminated plaintiff, has no bearing on the issues in this case. The court rejects the contention. It finds the information sought by Interrogatory 1 and Request 2 relevant.

Defendant further contends, however, that disclosure of the "personal" files kept by Mr. Bowman on other employees under his supervision would improperly sway their opinions against defendant and undermine the ability of Mr. Bowman to effectively manage such employees. It suggests that "wholesale disclosure" could undermine the morale and productivity of the department headed by Mr. Bowman. It further suggests that plaintiff might use information in the files to antagonize and harass the subject employees, notwithstanding an existing protective order.

Plaintiff does not refute these contentions or suggestions. The court finds good cause, therefore, to limit dissemination of the "personal" files. Such files shall be for use by the attorneys for plaintiff. Plaintiff himself shall have no access to them or their contents, until such time as they may be admitted into evidence in this case; if indeed the court admits them. Subject to this protective order, defendant shall produce all "personal" files responsive to Request 2 and fully answer Interrogatory 1.

2

Plaintiff also seeks an order to compel defendant to produce for inspection and copying all minutes of the Employee Review Committee (ERC) or of any meeting at which defendant decided to place him on probation or terminate or suspend him. Requests 1, 5, and 6 ask defendant to produce such minutes. Defendant objects to the production on grounds of attorney-client privilege and work product. It identifies a document titled, "ERC Minutes May 1, 1995," withheld on those grounds. Its former in-house attorney, Ronald Sandhaus, drafted it. Defendant asserts that the attorney-client privilege protects the document from discovery, because it "contains material discussed between and among Yellow employees and Mr. Sandhaus for purposes of rendering legal advice on how to address plaintiff's disciplinary problems." It also suggests that the document is attorney work product, because Mr. Sandhaus prepared it in anticipation of litigation. It claims the document contains communications between counsel and other participants of the ERC meeting. It also claims that the document reflects Mr. Sandhaus' thoughts and mental impressions of the facts and reasons for the discharge of plaintiff.

Plaintiff suggests that whatever legal advice Mr. Sandhaus may have given is merely incidental to business advice rendered. He thus argues that neither the attorney-client privilege nor the work-product doctrine protects the communications from discovery. He further contends that defendant waived any privilege that may have attached to the minutes, when its Vice President of Properties, Nile Glasebrook, testified about the ERC meeting, including the general substance of the discussions.

"Questions of privilege that arise in the course of the adjudication of federal rights are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" *United States v. Zolin*, 491 U.S. 554, 562 (1989) (quoting Fed. R. Evid. 501). As indicated by defendant, this court has previously held that federal law provides the rule of decision with respect to privilege in federal actions based upon a federal question,

3

even though joined with pendent state law claims. *See Case v. Unified Sch. Dist. #233*, No. Civ.A. 94-2100-GTV, 1995 WL 358198, at * 2-3 (D. Kan. June 2, 1995), *clarified on reconsideration*, 1995 WL 477705 (D. Kan. Aug. 11, 1995). In *Case* the court noted unanimous agreement among other courts considering the issue. *Id.* at 3. It further noted inherent impracticalities of applying two different rules of privilege to the same evidence. *Id.* The Tenth Circuit Court of Appeals has held, on the other hand, that when a plaintiff asserts both federal and state claims, the court should look to state law in deciding questions of privilege, as to the state causes of action. *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1551 (10th Cir. 1995), *cert. denied*, 116 S. Ct. 1678 (1996).

After the *Motley* decision, the choice-of-law issue again emerged in the District of Kansas. *See Hinsdale v. City of Liberal*, 961 F. Supp. 1490 (D. Kan. 1997). The court first noted that "all of the circuits that have directly addressed this issue have held that the federal law of privilege governs on issues of discoverability and/or admissibility even where the evidence sought might be relevant to a pendant state claim." *Id.* at 1493. It then recognized the apparent implications of *Motley*:

It thus could be argued that the 10th Circuit has decided not to follow the other circuits when both federal and state causes of action have been asserted in a case.

However, it is not clear that the 10th Circuit directly addressed the issue. The *Motley* opinion does not discuss at all the conflict in the law or any opinion or legal authority concerning what law should apply when both federal and state causes of action are in a case. *Motley* cites language in Fed. R. Evid. 501 which calls for looking at state law when there is a state cause of action However, Rule 501 is silent on what should be done when a case contains both state and federal causes of action. . . .

This court seriously doubts that the 10th Circuit has directly addressed the issue of which privilege law applies when the evidence is relevant to both state and federal claims that are in a case. However, this court is bound by the decisions of the 10th Circuit. Therefore, the court will analyze this motion based on the possibility that the 10th Circuit intended for state law of privilege to apply to the state causes of action in a case wherein both federal and state claims have been asserted.

961 F. Supp. at 1493.

4

Following *Hinsdale* the Tenth Circuit Court of Appeals unambiguously held that the court should consider both federal and state law of privilege, when both federal claims and pendent state law claims are implicated. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, ___, No. 96-3021, 1997 WL 727571, at *13 (10th Cir. Nov. 24, 1997). It specifically held:

> Here, with both federal claims and pendent state law claims implicated, we should con-
> sider both bodies of law under *Motley* and Fed. R. Evid. 501. If the privilege is upheld
> by one body of law, but denied by the other, problems have been noted. "In this situ-
> ation, permitting evidence inadmissible for one purpose to be admitted for another pur-
> pose defeats the purpose of a privilege. The moment privileged information is divulged
> the point of having the privilege is lost." 3 Weinstein's Federal Evidence, §
> 501.02[3][b] (Matthew Bender 2d ed.) (citing *Perrignon v. Bergen Brunswig Corp.*, 77
> F.R.D. 455, 458 (N.D. Cal. 1978)). If such a conflict on the privilege exists, then an
> analytical solution must be worked out to accommodate the conflicting policies
> embodied in the state and federal privilege law. Here, however, for reasons given
> below we are convinced that both federal and Kansas law support application of the
> attorney-client privilege. Therefore we need not articulate an analytical solution here
> for conflicts in attorney-client privilege rules.

129 F.3d at ___, 1997 WL 727571, at *13 (footnote omitted).

Following *Sprague*, the court will consider both federal and state law regarding privilege. Plaintiff alleges retaliation and/or sex discrimination under federal law, Title VII, 42 U.S.C. § 2000e *et seq.* (Compl., doc. 1, ¶¶ 57-65.) He also asserts claims of outrage, defamation, false imprisonment, and assault and battery under state law. (*Id.* ¶¶ 66-85.) If state and federal rules of privilege conflict, the court must analyze their application.

The court finds no conflict. Whether it applies federal or Kansas law generally makes no differ-
ence in determining whether the attorney-client privilege applies. *See Great Plains Mut. Ins. Co. v. Mutual Reinsurance Bureau*, 150 F.R.D. 193, 196 n.3 (D. Kan. 1993) (citing K.S.A. 60-426; *Wallace, Saunders, Austin, Brown & Enochs, Chartered v. Louisburg Grain Co.*, 250 Kan. 54, 824 P.2d 933 (1992)). "[T]he Kansas statute concerning the attorney-client privilege and its exceptions is typical of

5

the laws of other jurisdictions." *In re A.H. Robins Co.*, 107 F.R.D. 2, 8 (D. Kan. 1985). Certain

general propositions appear applicable under both federal and Kansas law. Federal law, moreover,

governs the applicability of the work product doctrine in federal court. *See Burton v. R.J. Reynolds*

*Tobacco Co.*, 167 F.R.D. 134, 139 (D. Kan. 1996).

The attorney-client privilege and the work product doctrine are distinctly different protections,

although related somewhat and often invoked together. *Great Plains Mut. Ins. Co.*, 150 F.R.D. at 196.

"Despite their differences, courts narrowly construe them both." *National Union Fire Ins. Co. v.*

*Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994). "Whatever their origins, these exceptions

to the demand for every man's evidence are not lightly created nor expansively construed, for they are

in derogation of the search for the truth." *United States v. Nixon*, 418 U.S. 683, 710 (1974) (unanimous

decision).

Parties asserting an objection of "work product immunity or attorney-client privilege bear[] the

burden of establishing that either or both apply." *Boyer v. Board of County Comm'rs*, 162 F.R.D. 687,

688 (D. Kan. 1995). They must make a "clear showing" that the asserted objection applies. *Ali v.*

*Douglas Cable Communications, Ltd. Partnership*, 890 F. Supp. 993, 994 (D. Kan. 1995). To carry

the burden, they must describe in detail the documents or information to be protected and provide

precise reasons for the objection to discovery. *National Union Fire Ins. Co.*, 159 F.R.D. at 567. They

must provide sufficient information to enable the court to determine whether each element of the

asserted objection is satisfied. *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995). A claim of

privilege or work-product protection fails upon a failure of proof as to any element. *Id.* A "blanket

claim" as to the applicability of a privilege or the work product doctrine does not satisfy the burden of

proof. *See Kelling v. Bridgestone/Firestone, Inc.*, 157 F.R.D. 496, 497 (D. Kan. 1994).

"The attorney-client privilege . . . is to be extended no more broadly than necessary to effectuate

its purpose." *Great Plains Mut. Ins. Co.*, 150 F.R.D. at 196. Its purpose

> is to encourage full and frank communication between attorneys and their clients and
> thereby promote broader public interests in the observance of law and administration
> of justice. The privilege recognizes that sound legal advice or advocacy serves public
> ends and that such advice or advocacy depends upon the lawyer's being fully informed
> by the client.

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[T]he privilege is triggered only by a client's

request for legal, as contrasted with business, advice." *Audiotext Communications Network, Inc. v. US*

*Telecom, Inc.*, No. Civ.A. 94-2395-GTV, 1995 WL 625962, at *8 (D. Kan., Oct. 5, 1995) (quoting

*Marc Rich & Co. A.G. v. United States (In re Grand Jury Subpoena Duces Tecum Dated Sept. 15,*

*1983)*, 731 F.2d 1032, 1037 (2d Cir. 1984)). "[T]he privilege exists to protect not only the giving of

professional advice to those who can act on it but also the giving of information to the lawyer to enable

him to give sound and informed advice." *Upjohn Co.*, 449 U.S. at 390. "Confidential disclosures by

a client to an attorney made in order to obtain legal assistance are privileged. . . . [The privilege] pro-

tects only those disclosures--necessary to obtain informed legal advice--which might not have been

made absent the privilege." *Fisher v. United States*, 425 U.S. 391, 403 (1976) (citations omitted).

Furthermore, it

> only protects disclosure of communications; it does not protect disclosure of the un-
> derlying facts by those who communicated with the attorney:
>> "[T]he protection of the privilege extends only to *communications* and not to
>> facts. A fact is one thing and a communication concerning that fact is an en-
>> tirely different thing. The client cannot be compelled to answer the question,
>> 'What did you say or write to the attorney?' but may not refuse to disclose any
>> relevant fact within his knowledge merely because he incorporated a statement
>> of such fact into his communication to his attorney."

*Upjohn Co.*, 449 U.S. at 395-96 (citation omitted).

The essential elements of the attorney-client privilege are nearly identical under both Kansas and federal law. Under federal common-law the essential elements are:

> (1) Where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

*Great Plains Mut. Ins. Co.*, 150 F.R.D. at 196 n.4 (citation omitted). Under Kansas law, they are:

> (1) Where legal advice is sought (2) from a professional legal advisor in his capacity as such, (3) the communications made in the course of that relationship (4) made in confidence (5) by the client (6) are permanently protected (7) from disclosures by the client, the legal advisor, or any other witness (8) unless the privilege is waived.

*State v. Maxwell*, 10 Kan. App. 2d 62, 63, 691 P.2d 1316, 1319 (1984) (citation omitted); *see also*, K.S.A. 60-426. The privilege "protects confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D. Kan. 1995); *see also, Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997), *reconsidered in part*, ___ F.R.D. ___, 1997 WL 536084 (D. Kan. Aug. 14, 1997); *Maxwell*, 10 Kan. App. 2d 62, 691 P.2d 1316; K.S.A. 60-426(a). Under Kansas law, "'communication' includes advice given by the lawyer in the course of representing the client and includes disclosures of the client to a representative, associate or employee of the lawyer incidental to the professional relationship." K.S.A. 60-426(c)(2). Such definition does not conflict with federal law. *See Upjohn*, 449 U.S. at 390.

The attorney-client privilege protects communications with in-house, as well as outside counsel. *Burton*, 170 F.R.D. at 484. Minutes of meetings attended by attorneys are not, however, automatically privileged. *Id.* at 485. That the document sought in this case comes from former in-house counsel for defendant carries little weight of itself on the scope or applicability of the privilege. "[In-house] status

8

alone does not dilute the privilege." *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984). Although

such status "does not alter the attorney/client privilege . . . when the attorney serves also in another

capacity, such as vice president, his advice is privileged 'only upon a clear showing' that it was given

in a professional legal capacity." *Pizza Management, Inc. v. Pizza Hut, Inc.*, No. 86-1664-C, 1989 WL

9334, at \*4 (D. Kan. Jan. 10, 1989); *see also*, *United States v. Chevron Corp.*, No. C-94-1885 SBA,

1996 WL 264769, at \*4 (N.D. Cal. Mar. 13, 1996), *amended by*, No. C 94-1885 SBA, 1996 WL

444597 (N.D. Cal. May 30, 1996).

> A basic element of the attorney-client privilege is that the attorney be in the appropriate
> role during communication with the client. Attorneys in such diverse occupations as
> professor or baseball manager do not occupy the role of attorney for privilege purposes
> as they discuss classroom assignments or the hit-and-run play. Communications must
> be made in the role of an attorney in order to qualify for the attorney-client privilege.
> Likewise, a full-time practicing attorney does not imbue all confidential communica-
> tions with the privilege. Such an attorney may have multiple roles in his activities (*e.g.*
> business advisor, corporate director, labor negotiator) that are not necessarily
> attorney-related roles for the purpose of the privilege. In the representation of corporate
> interests, counsel might find themselves performing multiple roles. Frequently the roles
> are closely related, which makes it virtually impossible to isolate a purely legal role
> from the nonlegal.

John William Gergacz, *Attorney-Corporate Client Privilege*, ¶ 3.02[2][a][iv] (2d Ed. 1990).

Communications with in-house counsel, "who at the time is acting solely in his capacity as a

business advisor, would not be privileged." *Great Plains Mut. Ins. Co.*, 150 F.R.D. at 197. The

privilege likewise does not extend to communications not made in professional confidence. *Pacific*

*Employers Ins. Co. v. P.B. Hoidale Co.*, 142 F.R.D. 171, 173 (D. Kan. 1992) (citing *State v. Breazeale*,

11 Kan. App. 2d 103, 105, 713 P.2d 973 (1986)). Nor does it extend "to advice and assistance that has

not been sought and received in matters pertinent to the profession." *Id.* It "applies only to communi-

cations made to an attorney in his capacity as legal advisor." *Wallace, Saunders, Austin, Brown &*

9

AO 72A
(Rev. 8/82)

*Enochs, Chartered v. Louisburg Grain Co.*, 250 Kan. 54, 60, 824 P.2d 933, 938 (1992). It applies only "when an attorney is giving advice concerning the legal implications of conduct, whether past or proposed." *Burton*, 170 F.R.D. at 484. A distinction exists "between a lawyer providing business or technical advice rather than legal advice. Legal advice must predominate for the communication to be protected." *Id.* (citations omitted). When the legal advice "is merely incidental to business advice," the privilege does not apply. *Id.* "There is also a distinction between a conference with counsel and a conference at which counsel is present." *Id.*

> [T]he mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged. For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. The mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged. The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential. To be privileged, the communication must relate to the business or transaction for which the attorney has been retained or consulted.

*Hinsdale v. City of Liberal*, 961 F. Supp. 1490, 1494 (D. Kan. 1997).

Plaintiff seeks minutes of any meeting at which the termination, suspension, or probation of plaintiff was decided by defendant. Ronald Sandhaus, former in-house counsel for defendant, drafted minutes of a meeting of the ERC held May 1, 1995. To determine the applicability of the attorney-client privilege the court must determine the role of Mr. Sandhaus at that meeting. To the extent he was not acting as an attorney providing legal advice, the privilege provides no protection for communications made to or from him.

Defendant contends that the role of Mr. Sandhaus was not to determine whether the discharge of plaintiff was a good business decision, but rather to ensure that the reasons and decision to discharge

10

AO 72A
(Rev. 8/82)

him were legally sound under the facts of the case. It asserts that Mr. Sandhaus did not deviate from his role as legal advisor. It further asserts that the document in question contains communications from managerial employees which were for the purpose of obtaining legal advice on how to handle the behavioral and conduct problems of plaintiff in light of accusations of discrimination and retaliation. It claims that the participants have maintained the confidentiality of the communications and the documents resulting from the meeting. It suggests it does not routinely convene meetings of the ERC, but only when faced with a decision to discharge an employee. It characterizes the presence and guidance of counsel at such meetings as critical, because of the legal implications associated with the discharge of an employee.

Defendant submits an affidavit of its present in-house counsel, Daniel Hornbeck. He states that the role of counsel at meetings of the ERC "is to render legal advice to managerial and human resources employees based upon the factual situation." (Aff. of Daniel L. Hornbeck, Esq., attached as Ex. A to Def.'s Resp. to Pl.'s Mot. to Compel, doc. 106, ¶ 3.) He avers that defendant has an attorney participate as a voting member "to ensure the Employee Review Committee's decision regarding the discharge of an employee complies with substantive and procedural law." (*Id.*) He also makes averments consistent with the ERC policy of defendant. (*Id.* at ¶ 2.) Plaintiff submits a copy of that policy. It provides in pertinent part:

> The prior approval of the [ERC] is required before a salaried or non-union employee who has at least six months' [sic] service with the company can be discharged or forced to resign. The purpose of this policy is to provide a high-level review prior to each discharge or involuntary resignation.
>
> The ERC is composed of three voting members: the Manager of Employee Relations (or designee), the Division or Department Vice-President (or designee), and a member of the Legal staff. While there may be other participants in the ERC meeting, the authority for decision-making is the ERC members.

11

. . .

It is the responsibility of the members of the ERC, after reviewing the case, to decide whether to terminate, place on probation, etc.

(ERC Prior Approval of Discharges, attached as Ex. F to Pl.'s Mot. to Compel, doc. 86.)

One purpose of the ERC meeting is that of review. Such review may include consideration of legal consequences of a proposed employment action. The primary function of the committee, however, appears to be a decision of what employment action to take against an employee. Notwithstanding the legal implications of such employment action, the business purposes of such a decision predominate the legal issues. In the context of a required meeting to determine possible employment actions, legal advice sought or received during such meeting appears to be incidental to considerations of what is most prudent for the successful operation of the business. A conference between client and counsel does not necessarily equate with a conference attended by counsel. The ERC meeting appears to be the latter. It serves to make a personnel decision. With an attorney present, the meeting nevertheless proceeded to determine whether to terminate the employment of plaintiff. Such a business decision may have legal consequences, as do many decisions of any business. That fact, together with the presence of legal counsel, however, does not convert the meeting into a conference between attorney and client. Nor does it make the attorney-client privilege applicable to whatever is said and done during the meeting.

As a voting member of the ERC, furthermore, Mr. Sandhaus was not acting merely as an attorney rendering legal advice. Officially voting on a proposed action goes beyond the bounds of giving legal advice. It performs an act of the business. Legal considerations may influence his vote

12

or that of any other committee member as well. The attorney-client privilege does not protect the act of voting, the minutes which record it, or all the discussion of the committee relating to its decision.

Defendant asserts that the membership of Mr. Sandhaus on the Employment Review Committee does not mean that he was acting in a non-legal capacity. Mere membership on a committee does not of itself necessitate a finding that counsel was not acting as an attorney. Membership on a committee which decides if an employee should be terminated, however, may lead to an inference that the attorney, at least in part, was acting in a non-legal capacity. When an attorney is a voting member, the indication is even stronger. As the party asserting privilege, defendant has the burden to demonstrate its applicability. This means an adequate showing that, as a voting member of the ERC, Mr. Sandhaus was nevertheless acting as legal counsel.

Defendant explains that it granted counsel voting membership on the committee "to ensure the legal efficacy of the employment decision." That is an admirable goal. Including an attorney on the committee, nevertheless, can create ambiguity as to his or her role. Defendant maintains that the role of counsel on the committee never strayed from rendering legal advice. It submits the affidavit of Mr. Hornbeck as proof. The affidavit sets forth what role counsel generally take at ERC meetings. It provides nothing of substance, however, about what Mr. Sandhaus in fact did at the meeting of May 1, 1995. The court declines to rely upon the generalization to demonstrate the applicability of a privilege. Defendant must show that the primary participation of Mr. Sandhaus at the ERC meeting was as a lawyer giving legal advice. In this respect the facts proffered by defendant fall short. The affidavit of Mr. Hornbeck expresses no personal knowledge of what occurred at the meeting. Defendant provides no affidavit either of Mr. Sandhaus or anyone else at the meeting to suggest he acted primarily

13

as counsel. The affidavit of Mr. Hornbeck indeed fails to confirm that anyone at the meeting of May 1, 1995 either asked for or received any legal advice from Mr. Sandhaus.

When an attorney serves in a non-legal capacity, such as a voting member of a committee required to review proposed employment actions, his advice is privileged only upon a clear showing that he gave it in a professional legal capacity. *See Pizza Management, Inc. v. Pizza Hut, Inc.*, No. 86-1664-C, 1989 WL 9334, at *4 (D. Kan. Jan. 10, 1989). The privilege protects only those communications predominated by legal advice. *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 484 (D. Kan. 1997), *reconsidered in part*, ___ F.R.D. ___, 1997 WL 536084 (D. Kan. Aug. 14, 1997). Defendant, as the party with the burden to show the privilege applicable, has not shown such predomination. Legal advice simply incidental to communication which is primarily business advice, however, does not qualify for the privilege.

Defendant suggests *Great Plains Mutual Insurance Company v. Mutual Reinsurance Bureau*, 150 F.R.D. 193 (D. Kan. 1993) supports its position that the attorney-client privilege is applicable. The court finds the case distinguishable. In *Great Plains* the information sought "appear[ed] to directly relate to legal advice rendered by [an] attorney in his capacity as legal advisor." *Id.* at 197. No such appearance exists here. From the information before the court, the minutes of the meeting of May 1, 1995, appear to relate to a business meeting at which counsel acted as a voting member. Defendant has not shown that Mr. Sandhaus was acting primarily as a legal advisor. In *Great Plains*, furthermore, the court was satisfied that the "attorney was acting in his capacity as an attorney during the relevant portions of the board meetings." *Id.* Defendant here has not made an adequate showing that Mr. Sandhaus was acting in a legal capacity during the meeting.

14

In *Great Plains* the party asserting the privilege also showed that the advice given required the skill and expertise of an attorney. *Id.* The showing here again falls short. In *Great Plains* the court noted the clear "purpose of the conversations during the board meetings was to render legal advice and that both Great Plains and its attorney understood that the purpose of the communications was to review and consider legal issues pertaining to Great Plains' litigation." *Id.* Here the purpose of the ERC meeting was to determine appropriate employment action against plaintiff. Any legal advice, if given, appears incidental to a personnel matter and to what was therefore prudent and expedient for successful operation of the business. Mr. Sandhaus appears to have been acting beyond the role of legal counsel when performing the role of voting member of the ERC.

The court next addresses whether the minutes are protected from discovery as work product. "Within the meaning of Fed. R. Civ. P. 26(b)(3), work product refers to documents and tangible things, prepared in anticipation of litigation or for trial, and prepared by or for a party or by or for a representative of that party." *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 200 (D. Kan. 1996).

> The work product standard has two components. The first is what may be called the "causation" requirement. This is the basic requirement of the Rule that the document in question be produced *because of* the anticipation of litigation, *i.e.*, to prepare for litigation or for trial. The second component is what may be termed a "reasonableness" limit on a party's anticipation of litigation. Because litigation can, in a sense, be foreseen from the time of occurrence of almost any incident, courts have interpreted the Rule to require a higher level of anticipation in order to give a reasonable scope to the immunity.

*Audiotext Communications Network, Inc*, 1995 WL 625962, at *8 (quoting *Harper v. Auto-owners Ins. Co.*, 138 F.R.D. 655, 659 (S.D. Ind. 1991)). "The court looks to the primary motivating purpose behind the creation of the document to determine whether it constitutes work product." *EEOC v. GMC*, No. 87-2271-S, 1988 WL 170448, at *2 (D. Kan. Aug. 23, 1988). "Materials assembled in the ordinary

15

course of business or for other non-litigation purposes are not protected by the work product doctrine. The inchoate possibility, or even likely chance of litigation, does not give rise to work product." *Ledgin v. Blue Cross & Blue Shield*, 166 F.R.D. 496, 498 (D. Kan. 1996) (citations omitted). "To justify work product protection, the threat of litigation must be 'real and imminent.'" *Audiotext Communications Network, Inc.*, 1995 WL 625962, at *9 (quoting *Reliance Ins. Co. v. McNally Inc.*, No. 89-2401-V, unpublished op. at 4 (D. Kan. Feb. 5, 1992)). To determine the applicability of the work product doctrine, the court generally needs more than mere assertions by the party resisting discovery that documents or other tangible items were created in anticipation of litigation. *See Pacific Employers Ins. Co.*, 142 F.R.D. at 174-75.

In this instance defendant suggests that Mr. Sandhaus created the minutes of the ERC meeting in anticipation of litigation. It asserts the anticipated litigation was clearly shown by plaintiff's filing a complaint with the Equal Employment Opportunity Commission (EEOC) and speaking of his "lawsuits" with co-workers. A defendant is generally justified in believing litigation to be imminent, after charges are filed with the EEOC. *EEOC v. GMC*, 1988 WL 170448, at *2. Such justification, however, does not transform every document thereafter prepared by the attorney into work product. The attorney must create the document "because of" the impending litigation. Work product generally does not apply, unless the primary motivating purpose for creating the document is to assist in pending or impending litigation. *Id.* "To invoke the doctrine, a party must show that the document was prepared principally or exclusively to assist in anticipated or ongoing litigation." *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997), *reconsidered in part*, ___ F.R.D. ___, 1997 WL 536084 (D. Kan. Aug. 14, 1997). The fact that defendant anticipated litigation with plaintiff does not make all documents thereafter "generated by or for its attorneys subject to work product im-

16

munity.  A party claiming work product immunity must still establish the underlying nexus between the preparation of the document and the specific litigation." *Burton v. R.J. Reynolds Tobacco Co.*, ___ F.R.D. ___, ___, No. 94-2202-JWL, 1997 WL 536084, at *5  (D. Kan. Aug. 14, 1997).

Defendant has not shown the primary motivating purpose behind the creation of the minutes here in question.  Mr. Sandhaus titled the document "ERC Minutes May 1, 1995."  The title suggests a purpose other than litigation.  The term "minutes" commonly means "the official record of the proceedings of a meeting."  *Webster's Ninth New Collegiate Dictionary* 757 (9th ed. 1988).  That definition appears particulary cogent.  Mr. Sandhaus drafted the minutes primarily to record what happened at the ERC meeting.  The court has noted the lack of showing that he was acting purely as legal counsel at the meeting.  His business role as a voting member of the committee appears to predominate over any role he may have filled as an attorney giving legal advice.

Defendant has not carried its burden to show that Mr. Sandhaus primarily created the minutes in question to assist in pending or impending litigation.  Documents created in the ordinary course of business are not protected by the work product doctrine.  Meetings of the ERC appear part of the ordinary course of the business of defendant.  That it convenes such meetings only when necessary does not prove otherwise.  That an attorney created the document in question, furthermore, does not of itself make it work product.  *Burton v. R.J. Reynolds Tobacco Co.*, 170 F.R.D. 481, 485 (D. Kan. 1997), *reconsidered in part*, ___ F.R.D. ___, 1997 WL 536084 (D. Kan. Aug. 14, 1997).  The doctrine does not protect summaries of business meetings, even when an attorney creates the summary.  *Id.*  "A party may not cloak a document with a privilege by simply having business, scientific or public relations matters handled by attorneys, whether in-house or outside counsel."  *Id.* at 488.

17

The court need not address the issue of waiver raised by plaintiff. It has found neither the work product doctrine nor the attorney-client privilege applicable to the minutes in question. Defendant shall produce the minutes of the ERC meeting of May 1, 1995 created by Mr. Sandhaus and all other documents responsive to Requests 1, 5, and 6.

For the foregoing reasons, the court sustains Plaintiff's Motion to Compel Discovery (doc. 86). Defendant shall, on or before January 22, 1998, fully answer Interrogatory 1 and produce all documents responsive to Requests 1, 2, 5, and 6 as set forth herein. Such production shall take place at the offices of counsel for plaintiff located at 1200 Main Street, Suite 1100, Kansas City, Missouri; or any other location agreed upon by the parties. Each party shall be responsible for its own costs and expenses incurred on the motion. Each side took defensible positions on at least part of the motion.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this ___6th___ day of January, 1998.

United States Magistrate Judge

cc:     All counsel
        and *pro se* parties

18